James Yiannias v. Commissioner.
Yiannias v. Commissioner
Docket No. 15766.
United States Tax Court
1949 Tax Ct. Memo LEXIS 191; 8 T.C.M. (CCH) 457; T.C.M. (RIA) 49111; May 10, 1949
*191 Francis J. O'Connor, Esq., Bank & Insurance Bldg., Dubuque, Ia., for the petitioner. Elmer L. Corbin, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: This proceeding was brought for a redetermination of a deficiency of $5,184.10 in petitioner's income tax for 1943. The sole question is the propriety of respondent's attribution to petitioner of a distributive share of the 1943 profits of Associated Theatres. Findings of Fact Petitioner, a resident of Dubuque, Iowa, filed a joint return with his wife Stella for the year 1942, and a separate return for 1943, with the collector of internal revenue for the district of Iowa. Under written lease dated June 30, 1937, petitioner leased a theatre building in Dubuque known as the Avon Theatre for a period of 15 years. Under date of September 1, 1937, petitioner, as lessee of Avon Theatre, Singer-Dubuque Co., a corporation, as lessee of the Orpheum Theatre, Dubuque, and Grand Opera House, Inc., as owners and operators of the Grand and Strand Theatres, entered into an agreement under the terms of which they agreed to operate the four theatres under joint management for a period *192 of six years commencing September 4, 1937, using the trade name of Associated Theatres. It provided that salaries of $125 per week to petitioner, and $75 per week to John H. Maclay were to be considered as operating expenses of the joint operation and that the net profits were to be divided as follows: Petitioner
28 percent
Singer-Dubuque
20 percent
Grand Opera House
52 percent
The respective parties were to pay the rentals called for in their leases and Grand Opera House, Inc., was to furnish the Grand and Strand Theatres free of rent. The management was to be "in the hands of the three following persons:" One person representing Grand Opera House, Inc; One person representing James Yiannias; One person representing Singer-Dubuque Company. The unanimous consent of these three was required to establish a policy in relation to the management of the theatres or to contract for films or supplies or equipment. Singer-Dubuque Company's RKO Picture franchise was to be carried out "and the Maclay & Yiannias-Fox Film Company three (3) year contract and all contracts already entered into" for films for the theatres were to be carried out. The agreement was extended *193 for an additional five years commencing September 4, 1943. Petitioner performed services for Associated Theatres for 1943, and was paid the same salary as previously by them. On December 15, 1942, petitioner and his wife executed the following document: "In consideration of the agreements herein of the other party hereto, James Yiannias does hereby assign to his wife Stella Poulos Yiannias the leasehold granted to him in the foregoing lease from Jessie R. Lacy as lessor and landlord, dated June 30th, 1937, together with all rights of the lessee or tenant granted in said lease except the right to payment of the deposit of Five Thousand ($5,000.00) Dollars and the interest thereon which right he reserves to himself; and in consideration of the premises the said Stella Poulos Yiannias hereby covenants and agrees with the said James Yiannias not to assign or underlet the said leasehold or the property covered thereby and, further, to employ the said James Yiannias as general manager of the Avon Theatre until the termination of said leasehold at such reasonable salary as may be agreed upon by them from time to time, and to assume and perform all the duties required of the tenant by *194 the said lease." The lessor of the premises leased by petitioner gave his consent in writing to the transfer and assignment of the leasehold interest by petitioner to Stella: "Provided that this license and consent is restricted to this particular assignment and save as aforesaid the covenant in said lease against assigning and subletting shall remain in full force and effect. It is understood that the said James Yiannias is in no manner released from his obligation as lessee and tenant under the said lease." On December 31, 1942, petitioner and Stella gave written notice to Singer-Dubuque Corporation and Grand Opera House, Inc., of his transfer and assignment of the lease to Stella. The operation of the theatres from September 1, 1937, to December 31, 1942, was in accordance with agreement bearing the earlier date, except that Singer-Dubuque furnished no services or representative in the operation of Associated Theatres. After December 31, 1942, and during 1943 the theatres were operated and managed in substantially the same manner as before. Petitioner's duties were substantially the same. The only difference was that the income which previously had been distributed to petitioner *195 was thereafter credited to the account of and distributed to Stella, who was furnished with monthly statements. Stella performed no services for the enterprises prior to 1943. Stella did not contribute to the enterprise any capital originating with her, nor did she perform any vital services for the business, which continued as before Stella bought a popcorn machine instead of renting one. and advised petitioner to buy some new talking device. Stella was concerned with the purchase of things, with the machines, and the buildings, including upkeep and taxes. If there was anything wrong she ordered petitioner to attend to it. She did not maintain an office but stayed at home with her small children. In 1943 Maclay was secretary of the Grand Opera House, Inc., and a salaried employee of the Associated Theatres. Petitioner consulted him with reference to his withdrawing from the Associated Theatres, and Maclay on behalf of the Grand Opera House consented. He regarded the arrangement as "a pooling of theatres," and no new agreement was entered into when petitioner made the assignment. Maclay was not concerned about petitioner's substituting Stella as a participant in the pool because *196 before Maclay consented, it was agreed that petitioner had no intention of ceasing to give his services to the Associated Theatres. Maclay was petitioner's superior in 1943; petitioner took advice and instructions from him. Petitioner continued in the same capacity, performing substantially the same services, after as before 1943 so far as the group was concerned. Petitioner had had numerous stays in hospitals, sick spells at home, and had been rejected for life insurance for physical reasons four or five times. In his notice of deficiency respondent stated: "It has been determined that your distributable share of income from the partnership, Associated Theatres, Dubuque, Iowa, is $18,723.67 instead of a salary of $5,771.18 as reported, making a difference of $12,952.49. For income tax purposes Mrs. Yiannias is not recognized as being a partner of the Associated Theatres, Dubuque, Iowa." Opinion The facts in this proceeding are more like those leading to the landmark decision in , than most of the family partnership cases which have arisen more recently. See, e.g., ; . *197 Petitioner's effort to substitute his wife for himself in a going partnership with others was an arrangement in which nothing but the appearances were changed. It is true he assigned to her the lease on the theatre which was his original capital contribution to the partnership. But as far as his relationship with the other contracting parties was concerned, there was as in , no actual transformation. The lessor continued to hold petitioner and his deposit liable after the assignment as before; and the "consent" of the chief managing partner of the partnership to the attempted substitution of the wife was on the express condition that petitioner would continue to render the same services to the partnership as he had from the beginning. It may consequently be said here, as positively as it was in , that there was no consent to any real substitution of the wife for petitioner in the operating partnership. The transfer of the lease and the direction to pay petitioner's share of the partnership earnings to his wife were no more than the kind of anticipatory arrangement repeatedly held to be ineffectual for income *198 tax purposes. See ; certiorari denied, ; rehearing denied, . , ; and , are not opposed to this view, although all were reversals of this tribunal. The last was decided before the Tower and Lusthaus cases. The first is adequately dealt with in J. M. Henson, infra. The Durwood case is distinguishable by the conclusion there reached by the Circuit Court that: "* * * The only basis upon which it could be held that the income was taxable to the petitioner is that he had diverted a part of his income to others, members of his family, but that is not this case * * * "* * * the interest of the son, wife and daughter did not come from petitioner." The stated situation does, however, exist in the present case; the wife's interest had to come from petitioner as the other partners were strangers and would not have given up their shares; and petitioner *199 thus has attempted to divert his income to his wife. We have recently determined that the mere assignment of the income-producing asset of a business does not constitute compliance with the requirement of capital originating with the donee; and that where the taxpayer continues to render the essential services and the wife's participation in management or contribution of additional vital services does not otherwise supply the missing requirements, the shifting of the business income will not be given effect in the imposition of tax liability. , (which petitioner makes no attempt to distinguish); see also ; . Here, aside from the property aspects of the assignment of the lease, the record is clear that the contribution of services to the partnership was that of petitioner and not of his wife. Even the slight participation in the business shown by the evidence was through petitioner or in his company and under his direction. There is not sufficient showing of the contribution of either capital or services to warrant the conclusion that there was a real and bona fide *200 partnership between petitioner's wife and the other participants. ; Decision will be entered under Rule 50.